a

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| MIA JULIANA MARTINEZ, Petitioner | CIVIL DOCKET NO. 6:26-CV-00041 SEC P |
| VERSUS | JUDGE EDWARDS |
| KRISTI NOEM ET AL, Respondents | MAGISTRATE JUDGE PEREZ-MONTES |

# MEMORANDUM ORDER

Before the Court is a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 (ECF No. 1) filed by Petitioner Mia Juliana Martinez ("Martinez"), an immigration detainee at the Adams County Correctional Center in Natchez, Mississippi.

Because Martinez's continued detention violates 8 U.S.C. § 1231(a)(6), as construed in *Zadvydas v. Davis*, 533 U.S. 678 (2001), her Petition should be GRANTED.

## I. Background

Martinez is a native and citizen of Honduras. According to the verified Petition, she has lived in the United States since 2003, was granted asylum in 2005, and became a lawful permanent resident in 2009. ECF No. 1 at 2, 6.

Martinez states that she was convicted in Maryland in 2018 of sexual abuse of a minor, third-degree and fourth-degree sexual offenses, and second-degree assault.

ECF No. 1 at 6. She asserts that the third-degree conviction was vacated, and she served approximately four to five years in prison before being released in 2021. *Id.*

Martinez was placed in removal proceedings in 2019 while in state custody. Doc. 12-2 at 1. On March 9, 2021, an immigration judge ordered her removed, but granted deferral of removal to Honduras under the Convention Against Torture ("CAT"). ECF No. 12-2 at 1. DHS did not appeal, and the removal order became administratively final on April 8, 2021. ECF No. 1 at 7.

Following her release from state custody, Martinez was temporarily detained, but DHS released her on an Order of Supervision ("OSUP") in 2021 or 2022. ECF No. 1 at 8; ECF No. 12-2 at 1. Martinez contends that she complied with the conditions of release, regularly reported to ICE in Baltimore, Maryland, and lived at liberty for until her re-detention in 2025. ECF No. 1 at 2, 7-8. She resided with her fiancé, operated a cleaning-services business, employed one person, and volunteered with a nonprofit providing HIV/AIDS-prevention services. ECF No. 1 at 7-8.

Martinez was re-detained on June 3, 2025, when she appeared for a required check-in at the Baltimore ICE field office. ECF No. 1 at 8; ECF No. 12-2 at 1. ICE thereafter sought to remove Martinez to Mexico. According to the February 11, 2026 Declaration of Assistant Field Office Director Charles Ward, Martinez was served with a Notice of Removal on August 24, 2025, advising her of ICE's intent to remove her to Mexico. ECF No. 12-2 at 1. Martinez was transferred to Pine Prairie ICE Processing Center on December 31, 2025. *Id.* at 2. ICE scheduled her removal to

Mexico and, on January 28, 2026, transferred her to the Port Isabel Detention Center for staging. *Id.*

On January 29, 2026, Martinez expressed a fear of removal to Mexico, and ICE referred her claim to USCIS for adjudication. ECF No. 12-2 at 2. On February 3, 2026, USCIS determined that Martinez had a credible fear of returning to Mexico. *Id.* Ward attests that ICE continued to work with Headquarters and the Department of State "to identify an alternative country of removal." *Id.*

Because the Government's evidence of removal efforts was several months old, the Court ordered the Government to supplement the record concerning the status of those efforts. Specifically, the Government was ordered to identify: (1) each country to which ICE currently intends or is attempting to remove Martinez; (2) the specific steps taken toward removal since the February 11, 2026 declaration of Assistant Field Office Director Charles Ward; (3) whether any country has agreed, or indicated a willingness, to accept Martinez; (4) whether travel documents have been requested or obtained; and (5) the factual basis for the Government's position as to whether Martinez's removal is significantly likely in the reasonably foreseeable future. ECF No. 21. The Government was further ordered to ensure that Martinez's attorneys knew where she was detained and were provided with a reasonable opportunity to communicate confidentially with Martinez. ECF No. 21. The Government was ordered to confirm in writing that counsel has been afforded such access. *Id.*

In response, the Government submitted a declaration dated September 23, 2026, detailing removal efforts since February. ECF No. 22-1. The declaration states

that Martinez's case was added to a third-country removal tracker in March 2026. *Id.* at 1. In April and May, ICE made inquiries concerning countries accepting Honduran nationals for third-country removal. *Id.* In August 2026, the Deportation Officer again requested information concerning countries willing to accept Honduran nationals with sex-offense and aggravated-felony convictions. *Id.* On August 19, 2026, the Detention and Deportation Officer responded that "there were no other placement options at the time." *Id.* The Response did not provide confirmation of Martinez's access to counsel, as ordered.

## II. Law and Analysis

### A. Zadvydas requires a burden-shifting inquiry.

After an order of removal becomes final, the Government generally must remove a detained noncitizen within 90 days. *See* 8 U.S.C. § 1231(a)(1)(A). Section 1231(a)(6) permits continued detention beyond that period in certain circumstances. But because the Constitution does not permit indefinite civil detention, the Supreme Court has construed the statute to authorize detention only for the period reasonably necessary to accomplish removal. *Zadvydas*, 533 U.S. at 689, 701. Under this framework, detention for up to six months is presumptively reasonable. *Id.* at 701. After that period, if a detainee establishes that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. *Id.*; *see also* 8 C.F.R. § 241.13

The petitioner bears the initial burden. *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006). The claim must rest on more than speculation, conjecture, or

conclusory assertions that removal will not occur. *See Andrade*, 459 F.3d at 543–44; *Idowu v. Ridge*, No. 3:03-CV-1293, 2003 WL 21805198, at *4 (N.D. Tex. Aug. 4, 2003) (citing *Fahim v. Ashcroft*, 227 F. Supp. 2d 1359, 1366 (N.D. Ga. 2002)). But a petitioner need not show that removal is impossible. *See Zadvydas*, 533 U.S. at 702.

The Government's continuing effort alone does not satisfy the inquiry. A rule that treats ongoing efforts to remove as proof of foreseeability "would seem to require an alien seeking release to show the absence of any prospect of removal—no matter how unlikely or unforeseeable—which demands more than our reading of the statute can bear." *Zadvydas*, 533 U.S. at 701; *accord Lambert v. Warden*, No. 26-CV-00427, 2026 WL 926216, at *3 (W.D. Tex. Apr. 6, 2026) ("[T]his Court cannot deem removal reasonably foreseeable so long as good faith efforts continue.").

**B. <u>The presumptively reasonable detention period has expired.</u>**

Martinez's removal order became final on April 7, 2021. She was re-detained on June 3, 2025, and has now remained in post-removal-order detention for more than 15 months. ECF No. 1 at 8; ECF No. 12-2 at 1. The presumptively reasonable removal period ended long ago—her detention has extended well beyond six months, and the presumption of reasonableness recognized in *Zadvydas* no longer applies. *See Shengelia v. Ortega*, No. 5:25-CV-1545, 2025 WL 3654368, at *3 (W.D. Tex. Dec. 16, 2025); *Altayb v. U.S. Immigr. & Customs Enf't*, No. 1:25-CV-01615, 2026 WL 550093, at *1 (W.D. La. Feb. 9, 2026), *adopted by* 2026 WL 544292 (W.D. La. Feb. 26, 2026).

The length of confinement matters to the standard itself. As the period of post-removal detention grows, what counts as the reasonably foreseeable future correspondingly shrinks. *Zadvydas*, 533 U.S. at 701.

**C. <u>Martinez has satisfied her initial burden.</u>**

Martinez's removal to Honduras—the country designated in her removal order—has been deferred under CAT. Although the Government pursued Martinez's removal to Mexico, USCIS determined on February 3, 2026 that she had a credible fear of returning there. ECF No. 12-2 at 2. Thereafter, the Government began attempting to identify another country willing to receive her.

The Government's September 23, 2026 declaration confirms that its efforts have not produced a viable—or even potential—third country for removal. Martinez's case was added to the third-country removal tracker in March 2026. ECF No. 22-1 at 1. In April and May, ICE sought information concerning countries accepting Honduran nationals for third-country removal. *Id.* In August 2026, the Deportation Officer again requested information concerning countries accepting Honduran nationals with convictions like Martinez's. *Id.* On August 19, 2026, the Detention and Deportation Officer responded that "there were no other placement options at the time." *Id.*

**D. <u>The Government has not rebutted Martinez's showing.</u>**

The Court specifically ordered the Government to identify each country to which ICE currently intends or is attempting to remove Martinez, whether any country has agreed or indicated a willingness to accept her, whether travel documents

have been requested or obtained, and the factual basis for concluding that removal is significantly likely in the reasonably foreseeable future. ECF No. 21. Yet the supplemental declaration identifies no country to which Martinez is presently expected to be removed, no country that has agreed or indicated a willingness to accept her, and no requested, pending, or obtained travel documents. Instead, the declaration states only that ERO is "actively working to find [Martinez] a third country for removal." ECF No. 22-1.

That showing is insufficient under *Zadvydas*. The relevant inquiry is not whether the Government is making efforts to effectuate removal, but whether there is a significant likelihood that removal will actually occur in the reasonably foreseeable future. *Zadvydas*, 533 U.S. at 701. A rule that treated ongoing efforts to remove as proof of foreseeability "would seem to require an alien seeking release to show the absence of any prospect of removal—no matter how unlikely or unforeseeable—which demands more than our reading of the statute can bear." *Zadvydas*, 533 U.S. at 701; *accord Lambert v. Warden*, No. 26-CV-00427, 2026 WL 926216, at *3 (W.D. Tex. Apr. 6, 2026) ("[T]his Court cannot deem removal reasonably foreseeable so long as good faith efforts continue.").

Here, the Government's own evidence establishes that, approximately seven months after it first represented that it was attempting to identify an alternative country of removal, it has made no progress. Indeed, its most concrete update is that there are "**no other placement options**" as of August 19, 2026. ECF No. 22-1 at 1. The September declaration provides no evidence that this circumstance has changed.

The Government previously argued that Martinez's detention was prolonged by her decision to assert a fear of removal to Mexico shortly before her scheduled removal. ECF No. 12 at 4. Whatever relevance that circumstance may have had when Mexico remained a viable destination, it does not establish a significant likelihood of removal now. USCIS subsequently determined that Martinez had a credible fear of returning to Mexico. More than seven months later, its search for a third country remains fruitless.

Accordingly, considering the length of Martinez's detention, the deferral of her removal to Honduras, the unsuccessful effort to remove her to Mexico, and the absence of evidence identifying another country that may be willing to receive her, Martinez has shown that there is no significant likelihood of her removal in the reasonably foreseeable future. The Government's generalized representation that it continues to search for a third country is insufficient to rebut that showing. Her continued detention therefore exceeds that authorized by § 1231(a)(6) as construed in *Zadvydas*.

The Government's emphasis on Martinez's criminal history is misplaced. Criminal history does not alter the inquiry under *Zadvydas*. Indeed, the petitioners in *Zadvydas* themselves had criminal histories. Moreover, Martinez's criminal history was known to the Government when it released her from immigration custody on an OSUP after she completed her criminal sentence, and she remained at liberty under supervision for three to four years before her re-detention in June 2025. Most importantly, that history does not establish a significant likelihood that Martinez can

be removed in the reasonably foreseeable future. To the contrary, the Government's supplemental evidence reflects that ICE specifically sought countries willing to accept Honduran nationals with similar convictions, but there are "no other placement options at the time." ECF No. 22-1 at 1. Thus, while Martinez's criminal history may be relevant to the conditions imposed upon her release, it does not establish a significant likelihood of removal in the reasonably foreseeable future.

The Government's failure to comply with the Court's order regarding Martinez's access to counsel is particularly troubling given the difficulty counsel has experienced locating and communicating with Martinez, who has reportedly spent more than seven months in solitary confinement because of her transgender status. ECF No. 17-1 at 2-3. However, the Court will not order another response from the Government, as doing so would only further delay the resolution of this matter.

## III. Conclusion

Because Martinez's continued detention violates § 1231(a)(6), as construed in *Zadvydas*, IT IS ORDERED that the Petition is GRANTED and that Martinez be RELEASED under appropriate conditions WITH ADVANCE NOTICE TO COUNSEL within seven days.

SIGNED on Thursday, October 1, 2026.

JERRY EDWARDS, JR.
UNITED STATES DISTRICT JUDGE